**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DR. JANET B. SULLIVAN,

    Plaintiff-Appellant,

v.

DR. FRANCIS J. HARVEY, Secretary,
Department of Army, Agency; MS. CARI
M. DOMINGUEZ, Commissioner, Equal
Employment Opportunity Commission,
Agency,

    Defendant-Appellees.

No. 07-1206

(D.C. No. 06-cv-838-LTB-CBS)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, EBEL,** and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,

ordered submitted without oral argument.

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Janet Sullivan, appearing pro se, appeals from the district court's dismissal of the Title VII action she filed against the Secretary of the United States Army and the Commissioner of the Equal Employment Opportunity Commission. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Sullivan is a former civilian employee of the United States Army at its Fort Carson installation in Colorado Springs, Colorado. In late 2002 and the spring of 2003, Sullivan, while still employed by the Army, filed complaints with the Equal Employment Opportunity Commission (EEOC) alleging sex and disability-based discrimination on the part of Army officials. On June 9, 2003, Sullivan and Army officials negotiated a settlement agreement that purported to resolve Sullivan's allegations of discrimination. Under the terms of that agreement, Sullivan agreed to withdraw her complaints of discrimination, forego the filing of any lawsuits arising out of her allegations of discrimination, and voluntarily retire from her position with the Army effective July 3, 2003. In return, the Army agreed, in pertinent part, to pay Sullivan "a lump sum of $61,000.00 for compensatory and medical damages." ROA, Vol. I, Doc. 1, Att. 2 at 2. The agreement expressly stated that the Army "ma[de] no representations to [Sullivan] concerning the tax consequences of this payment." Id. The agreement further stated that "the parties agree[d] that any tax obligation" arising from this payment would "be the obligation of [Sullivan] and not the obligation of the [Army] (or any other component of the United States), should the taxing authority make any such determination." Id.

2

In February 2004, the Army issued to Sullivan and the Internal Revenue Service (IRS) a Form 1099-MISC (Form 1099) listing the $61,000 payment as miscellaneous income for Sullivan for the tax year 2003.[1] Id., Att. 3. Although Sullivan acknowledges receiving the Form 1099, she allegedly did not begin preparing her 2003 tax return until early April 2005. At that time, she concluded that the Form 1099 had been improperly issued.

On April 6, 2005, Sullivan sent a letter to the Army alleging that it had breached the settlement agreement by issuing the Form 1099 and classifying the $61,000 payment as miscellaneous income. The Army's Equal Employment Opportunity Compliance and Complaints Review division treated Sullivan's letter as a settlement noncompliance claim and responded to her allegations on April 28, 2005, concluding that the settlement agreement had not been breached and that Sullivan's claim was untimely. Sullivan unsuccessfully appealed the Army's determination to the EEOC.

On May 2, 2006, Sullivan, appearing pro se, filed this Title VII action against the Secretary of the Army and the Commissioner of the EEOC. ROA, Vol. I, Doc. 1. In her complaint, Sullivan alleged that the Army, by issuing the Form 1099 classifying the $61,000 payment as miscellaneous income, (a) discriminated against her on the basis of her race and physical and mental disabilities, (b) breached the settlement agreement, (c) failed to reasonably accommodate her disabilities, (d) committed fraud, and (e) took

_____

[1] The Form 1099 also reported a separate $1,000 payment that was made by the Army to Sullivan as part of the settlement agreement. Sullivan did not and does not challenge the inclusion of this payment on the form.

3

advantage of her "impaired condition to conduct bad faith bargaining." Id. at 2. Sullivan also alleged that both the Army and the EEOC improperly processed her claims and appeals.

Defendants moved to dismiss Sullivan's complaint for lack of subject matter jurisdiction and/or failure to state a claim upon which relief could be granted. The magistrate judge assigned to the case issued a report recommending that defendants' motion be granted. In doing so, the magistrate judge concluded that Sullivan failed to state a valid claim for relief under Title VII based upon her allegations that the Army and EEOC improperly processed her claims and appeals. The magistrate judge further concluded that Sullivan had failed to timely exhaust her administrative remedies with respect to her remaining Title VII claims and was not entitled to application of the equitable tolling doctrine. The district court subsequently adopted the magistrate judge's recommendation, granted defendants' motion to dismiss, and dismissed the case.

## II.

In her appeal, Sullivan challenges the district court's dismissal of her claims arising out of the Army's issuance of the Form 1099.[2] According to Sullivan, the district court erred in refusing to apply the equitable tolling doctrine to her claims. We review for abuse of discretion the district court's decision not to apply equitable tolling. Harms

---

[2] In her appellate brief, Sullivan only makes passing mention of the Army's and EEOC's allegedly improper processing of her appeals and claims, and does not otherwise seriously dispute the district court's dismissal of those claims. To the extent she intends to appeal the district court's dismissal of those claims, we affirm for the reasons stated by the district court.

4

v. I.R.S., 321 F.3d 1001, 1006 (10th Cir. 2003).

Title VII prohibits military departments from engaging in discriminatory personnel practices with respect to their employees. 42 U.S.C. § 2000e-16(a). Before initiating a Title VII action in federal court, a military employee must first timely exhaust available administrative remedies. Id. § 2000e-16(c); see Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993) ("[E]xhaustion of administrative remedies is a jurisdictional prerequisite to instituting a Title VII action in federal court.") (internal quotation marks omitted). This exhaustion process typically includes "consult[ing] a Counselor prior to filing a complaint [with the military department] in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). Such consultation must occur within forty-five days "of the date of the matter alleged to be discriminatory or, in the case of personnel action, within [forty-five] days of the effective date of the action." Id. § 1614.105(a)(1). If, however, the military employee's complaint arises out of the military department's alleged failure "to comply with the terms of a settlement agreement," the employee must "notify the EEO Director, in writing, of the alleged noncompliance within [thirty] days of when the [employee] knew or should have known of the alleged noncompliance." 29 C.F.R. § 1614.504(a).

Sullivan concedes that she did not act within either of these established time frames. In particular, Sullivan acknowledges that she received the Form 1099 in February 2004, but did not contact either the Army or the EEOC to express her concerns regarding the Form 1099 until April 6, 2005. She contends, however, that she is entitled to application of the equitable tolling doctrine because "affirmative misconduct by the

5

Army" "caused [her] to miss the deadline through no fault of her own." Aplt. Br. at 7. In support of this contention, Sullivan asserts (1) "there was a 'meeting of the minds' during negotiations for the settlement agreement . . . that the lump sum payment of $61,000 . . . would be nontaxable income," id., (2) notwithstanding this "meeting of the minds," the Army's legal representative, Major Karen Pike, "took unfair advantage of . . . Sullivan, who was heavily medicated," id., by composing the key language of the settlement agreement, performing the word processing functions herself, and "reassur[ing] . . . Sullivan that the language meant it would be nontaxable income," id. at 8, (3) "Major Pike avoided divulging the disclaimers by inserting them into the" settlement agreement "after the parties finished mediating the terms and conditions of the contract," id. at 10, and (4) "revelation of the deception" was postponed because the "Army and Defense Finance and Accounting System did not withhold income taxes from the lump sum at the time of disbursement," id. at 9. Sullivan further contends that Major Pike, by "employ[ing] her superior knowledge and act[ing] in a dominant role during" the settlement agreement negotiations, effectively assumed, and then proceeded to violate, fiduciary responsibilities towards Sullivan. Id. at 14. Finally, Sullivan contends she "could not have exercised due diligence to prevent the misconduct because she was severely impaired by illness and intoxication by prescription medication at the time she attended the" settlement negotiations, "and for 18 to 24 months afterwards." Id. at 15.

The time limits established by Title VII for initiating administrative remedies are not jurisdictional, Harms, 321 F.3d at 1006, and thus "are subject to . . . equitable tolling."

6

29 C.F.R. § 1614.604(c). We have, however, narrowly limited the circumstances in which equitable tolling will be permitted. Harms, 321 F.3d at 1006; Biester v. Midwest Health Serv., Inc., 77 F.3d 1264, 1267 (10th Cir. 1996). Generally speaking, we have expressly recognized equitable tolling of Title VII's time limitations only if the circumstances of a case rise to the level of "active deception," such as where a plaintiff has been "lulled into inaction by her past employer," or has been "actively misled" or "in some extraordinary way been prevented from asserting his or her rights . . . ." Biester, 77 F.3d at 1267 (internal quotation marks omitted). Although we have acknowledged the possibility of an exception for mental incapacity, we have indicated that "exceptional circumstances" would have to exist for the recognition of such an exception, and we have yet to actually apply such an exception in any case. Id. at 1268.

Here, we interpret Sullivan's request for application of equitable tolling as hinging on her assertion that she was mentally impaired or incapacitated during the time of the settlement negotiations and for nearly two years thereafter. We are not persuaded, however, that the circumstances she has alleged are truly "exceptional." To begin with, there is no allegation that Sullivan has ever been adjudged incompetent or institutionalized. Id. Further, as the magistrate judge noted in recommending dismissal of the complaint, Sullivan made no mention of being mentally impaired or incapacitated in her April 6, 2005 letter first complaining about the Form 1099, and in fact did not make any such assertion until after her complaint was initially denied by the Army. Moreover, as the magistrate judge also noted, Sullivan's claims of mental impairment are

7

wholly inconsistent with her assertions that she clearly remembers the details of the settlement negotiations and Major Pike's conduct during those negotiations. Accordingly, we conclude the district court did not abuse its discretion in refusing to apply the equitable tolling doctrine to Sullivan's claims.

The judgment of the district court AFFIRMED. Sullivan's motion to proceed in forma pauperis on appeal is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge